Argued and submitted August 22, 2007, affirmed August 6, petition for review allowed December 24, 2008 (345 Or 503)

Bradley COLEMAN
and Bonnie Coleman,
husband and wife,
*Plaintiffs-Appellants,*

*v.*

OREGON PARKS AND RECREATION DEPARTMENT,
by and through State of Oregon,
and John Does 1-3,
*Defendants-Respondents.*

Coos County Circuit Court
05CV0272; A131472

190 P3d 487

George W. Kelly argued the cause and filed the brief for appellants.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondents. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Brendan C. Dunn, Assistant Attorney General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

Bradley Coleman sustained serious injuries while riding a bicycle on a trail in a state park. He and his wife, Bonnie Coleman, sued the state to seek compensation for his injuries and her loss of consortium.[1] The trial court granted the state's motion for summary judgment on both claims based on the recreational immunity statute, ORS 105.682(1). Plaintiffs appeal from the ensuing judgment. We affirm.

As we discuss in more detail later in this opinion, ORS 105.682(1), in combination with ORS 105.688(2)(a), grants a landowner immunity from liability when the landowner permits the public to use the land for recreational purposes without "charge for permission to use the land." The question presented in this case is whether that immunity is forfeited where the state imposed a fee to camp overnight in the park but did not impose a fee to enter the park or to use the trails. The parties agree—as do we—that there is no dispute as to the material facts and that resolution of the question is a matter of construing the recreational immunity statutes.

We begin with a brief statement of the undisputed facts. The state imposes fees for camping and for use of gazebos during the day at William M. Tugman State Park, located on the Oregon coast. The state does not impose a fee for simply entering the park or for using the designated trails in the park. On the day of the incident, Bradley was staying overnight at the park campground.

After arriving at the park, Bradley and a friend decided to explore the park on their mountain bikes. While on a designated trail, Bradley rode over the end of a bridge that lacked a ramp on one side, crashed his bike, and broke his neck.

Plaintiffs filed a complaint against the state alleging that it was negligent in leaving a two-and-one-half-foot drop-off at the end of the bridge, in leaving the bridge open to the

---

[1] We refer to Bradley Coleman and Bonnie Coleman collectively as plaintiffs. For convenience, when we refer to them individually, we refer to them by their respective first names.

public, and in failing to adequately warn the public of the dangerous condition of the bridge. Bradley sought damages for the injuries he sustained; in a separate claim, Bonnie sought damages for loss of consortium.

After filing its answer, the state moved for summary judgment. It contended, in part, that the recreational immunity statutes shielded the state from liability on all claims because its camping fee did not constitute a "charge for permission to use the land" within the meaning of ORS 105.688(2)(a).[2] Plaintiffs opposed the state's motion, taking the contrary position as to whether the overnight camping fee satisfied the definition of a "charge for permission to use the land." The trial court adopted the analysis contained in the state's motion and dismissed the complaint. Plaintiffs appeal.

Because this case presents a question of statutory construction, we review the trial court's ruling on the state's motion for summary judgment for errors of law. *State v. Rogers*, 330 Or 282, 312 n 8, 4 P3d 1261 (2000) (appellate courts review legal questions anew, without deference to the trial court). We recently stated in another case examining the recreational immunity statutes:

> "The scope of the immunity conferred by ORS 105.682 is a question of statutory construction. We therefore examine the statute, applying the interpretive method described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), to determine what the legislature most likely intended it to mean.

> "We begin with an examination of the text of the statute in its context. *Id.* In doing so, we construe statutory terms in accordance with any definitions that the legislature has supplied; when the legislature has not defined the relevant

---

[2] The state also asserted below that its maintenance decisions with respect to the condition of the bridge were discretionary in nature, entitling it to immunity on that basis as well. In addition, it contended that Bonnie's loss of consortium claim was barred because she did not give the state proper notice of her intent to assert that claim. The trial court did not address the state's discretionary immunity defense. It did, however, grant the state's motion for summary judgment as to the loss of consortium claim on the alternative basis that the state had not received proper notice of that claim. Although plaintiffs challenge that ruling as well, we decline to address it given our disposition regarding recreational immunity.

terms, we generally assume that it intended the ordinary meaning of those terms to apply. *Multifoods Specialty Distribution v. McAtee,* 333 Or 629, 635, 43 P3d 1101 (2002)."

*Liberty v. State Dept. of Transportation,* 200 Or App 607, 613, 116 P3d 902, *adh'd to as modified,* 202 Or App 355, 122 P3d 95 (2005), *rev'd on other grounds,* 342 Or 11, 148 P3d 909 (2006). In examining the text of the statute, we are not permitted to insert what the legislature has omitted or to omit what the legislature has inserted. ORS 174.010; *Waggoner v. City of Woodburn,* 196 Or 715, 721, 103 P3d 648 (2004); *Wheaton v. Kulongoski,* 209 Or App 355, 363-64, 147 P3d 1163 (2006).

With those guiding principles in mind, we turn to an examination of the pertinent portions of the recreational immunity statutes. ORS 105.682(1) provides, in part:

"Except as provided by subsection (2) of this section, and subject to the provisions of ORS 105.688, an owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes * * * when the owner of land either directly or indirectly permits any person to use the land for recreational purposes * * *. The limitation on liability provided by this section applies if the principal purpose for entry upon the land is for recreational purposes * * * and is not affected if the injury, death or damage occurs while the person entering land is engaging in activities other than the use of the land for recreational purposes * * *."

Pertinent to our discussion, under ORS 105.688(2)(a), the grant of immunities in ORS 105.682 applies only if "[t]he owner makes no charge for permission to use the land." The legislature defined "charge" for these purposes to mean "the admission price or fee asked by any owner in return for permission to enter or go upon the owner's land." ORS 105.672(1) (2005).[3]

As we said in *Liberty,* the legislature, in enacting ORS 105.682(1), effected a *"quid pro quo,* namely, if owners permit the public to use their land for recreational purposes,

---

[3] In 2007, the legislature amended the definition of "charge." Or Laws 2007, ch 372, § 1. Because the pertinent events in this case occurred before the effective date of that legislation, the earlier version of the statute applies.

the state will confer immunity for any injuries or damages that result from that use[.]" 200 Or App at 613. The legislature has explicitly stated the policy supporting that *quid pro quo*: "[I]t is the public policy of the State of Oregon to encourage owners of land to make their land available to the public for recreational purposes * * * by limiting their liability toward persons entering thereon for such purposes * * *." ORS 105.676. However, by also enacting ORS 105.688(2)(a), the legislature limited that grant of immunity to those circumstances in which the owner of the land does not impose a "charge for permission to use the land."

Here, the parties do not dispute that Bradley was injured while using Tugman State Park for recreational purposes within the meaning of ORS 105.682(1). Accordingly, unless the state imposes a "charge for permission to use" Tugman State Park within the meaning of ORS 105.688(2)(a), the state has immunity from liability for plaintiffs' claims.

At the outset, there is no dispute that the state imposes a fee for using the park for a particular recreational purpose—that is, camping, which is expressly included among the "[r]ecreational purposes" listed in ORS 105.672(5). In plaintiffs' view, the overnight camping fee accordingly constitutes a "charge for permission to use [the state's] land" under ORS 105.688(2)(a), thereby resulting in the forfeiture of the state's immunity.

The state responds that plaintiffs' construction of the statute ignores the applicable statutory definition of "charge." It is not enough, the state contends, that a landowner imposes a fee for permission to use the land for some particular recreational purpose. The term "charge," as defined in ORS 105.672(1) (2005), is "the admission price or fee asked by any owner in return for permission *to enter or go upon* the owner's land." (Emphasis added.) If, as here, the public is permitted to enter or go upon the land without paying a fee, no "charge" is imposed, according to the state. That is so even if, as here, a fee thereafter is imposed for engaging in a specific recreational activity on the land.[4]

---

[4] The state alternatively contends that, even if a fee for permission to use the land for a specific recreational purpose constitutes a "charge for permission to use

To resolve this dispute, we must construe the recreational immunity statutes. To reiterate, ORS 105.682(1) grants a landowner immunity "for any personal injury * * * that arises out of the use of the land for recreational purposes * * * when the owner of land * * * permits any person to use the land for recreational purposes * * *." ORS 105.688(2)(a) qualifies that grant, however, by expressly stating that that immunity applies only if "[t]he owner makes no charge for permission to use the land." The question here is whether the state, despite imposing a fee for overnight camping, nevertheless permitted its land to be used without making a "charge for permission to use the land," given that the legislature has defined a "charge" as "the admission price or fee asked by any owner in return for permission to enter or go upon the owner's land," ORS 105.672(1) (2005), or whether the camping fee itself constitutes such a charge and results in the loss of immunity as to all activities in the park.

Plaintiffs do not contend that the camping fee was an "admission price" or a "fee asked * * * in return for permission to enter" the park. *See* ORS 105.672(1) (2005). Rather, they assert that it was a "fee asked * * * in return for permission to * * * go upon" the park land. *See id.* Because the legislature has not defined the phrase "go upon," we resort to the common, ordinary meanings of the words used in the phrase. *PGE*, 317 Or at 611.

"Go" commonly means "to move on a course : pass from point to point or station to station; * * * to be in motion." *Webster's Third New Int'l Dictionary* 971 (unabridged ed 2002). "Upon" commonly means "on," *id.* at 2517, and "on" ordinarily is "used as a function word to indicate position over and in contact with that which supports from beneath ‹the book is ~ the table› ‹was built ~ an island› ‹kept his hands ~ the desk›," *id.* at 1574. Thus, to "go upon the land" means to move on a course over or in contact with the land.

We therefore consider whether a fee for camping is a fee to move on a course over and in contact with the land, as

the land" under ORS 105.688(2)(a), the state nevertheless maintains immunity unless the injury arises out of the particular use for which the fee is charged. The state contends that, because Bradley was injured while engaged in an activity for which the state imposes no fee, it is immune from liability for his injuries. Because we conclude that the fee here is not a "charge" and therefore not a "charge for permission to use the land," we need not consider that alternative argument.

Bradley was doing when he was injured. It is apparent from the record that the state charges no fee to members of the public to go upon the entire property that comprises the park. The public's access apparently is unfettered, even as to the areas designated for camping. Payment of a fee is required to engage in a specific activity in those areas—that is, camping overnight—and presumably to exclude others from a particular campsite. But payment of a fee is not required to move on a course over and in contact with an area designated as a campsite.[5] In other words, payment of the fee merely entitles a member of the public to do something on the land while moving about on the land that another may not do.

We must give effect to the definition of "charge" used by the legislature. *State v. Couch*, 341 Or 610, 617-18, 147 P3d 322 (2006); *Liberty*, 200 Or App at 613. Doing so requires the conclusion that, if a landowner imposes a fee in return for permission to engage in a particular activity on the land but otherwise imposes no admission price or fee generally to enter or move on a course over and in contact with the land, the owner makes no charge for use of the land within the meaning of the statute. Here, the state did not require payment of a fee to "enter or go upon" Tugman State Park. It, accordingly, did not forfeit its immunity from liability for plaintiffs' claims arising from Bradley's accident on the trails.

Plaintiffs protest that the *quid pro quo* in the immunity statute demonstrates that the legislature never intended to grant immunity to landowners who are in the business of charging for engaging in some activities on the land, even though they allow some other activities to be engaged in without any payment. We are not persuaded. First, as we have discussed, plaintiffs' contention does not give effect to the plain meaning of the statute. Second, plaintiffs' interpretation would produce results inconsistent with the legislature's expressed intent. Plaintiffs contend that any time a landowner imposes a fee, no matter how small, in connection with a recreational use of land, the landowner has

---

[5] We also note that payment of a camping fee would not result in permission to move about on a designated camping area as to which another person already had paid a fee. Accordingly, payment of a fee has no bearing on a person's right to move about on all designated camping areas. A person can, without paying a fee, access all camping areas except those for which someone else already has paid a fee.

imposed a charge for permission to use the land and has thereby forfeited recreational immunity. Under that reading, if a landowner allows the public generally to use the owner's land for recreational purposes but, for example, imposes a small fee for fishing in a pond on the land and uses the fees collected to stock the pond, the owner would forfeit immunity from liability for all injuries that may result from any permitted recreational use of the land. Plaintiffs' interpretation thus would significantly narrow the circumstances in which landowners could invoke immunity, contradicting the legislative purpose. *See* ORS 105.676.

Affirmed.