Argued and submitted June 11, decision of Court of Appeals reversed;
case remanded to Court of Appeals for further proceedings September 24, 2009
See 234 Or App 132, 227 P3d 815 (2010)

Bradley COLEMAN
and Bonnie Coleman,
husband and wife,
*Petitioners on Review,*

*v.*

OREGON PARKS AND RECREATION DEPARTMENT,
by and through the State of Oregon,
and John Does 1-3,
*Respondents on Review.*

(CC 05CV0272; CA A131472; SC S056563)

217 P3d 651

Balmer, J., filed dissenting opinion in which Kistler and Linder, JJ., joined.

George W. Kelly, Eugene, argued the cause and filed the brief for petitioners on review.

David B. Thompson, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the

brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

W. Eugene Hallman, Hallman & Dretke, Pendleton, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

WALTERS, J.

Balmer, J., filed a dissenting opinion in which Kistler and Linder, JJ., joined.

## WALTERS, J.

A landowner is immune from suit for injuries that arise out of the recreational use of its land when the owner "permits any person to use the land for recreational purposes[.]" ORS 105.682(1). However, that immunity applies only if the landowner "makes no charge for permission to use the land[.]" ORS 105.688(2)(a). In this action for injuries arising out of plaintiffs' use of a state park, the trial court granted summary judgment for the state, concluding that the state was entitled to recreational immunity under ORS 105.682. The Court of Appeals affirmed. We conclude that the state made a charge for permission to use the park and, thus, that the state was not entitled to summary judgment based on recreational immunity. We therefore reverse the decision of the Court of Appeals and remand the case to that court for further proceedings.

The uncontested facts that give rise to the issue before us are as follows. Plaintiffs Bradley and Bonnie Coleman were camping at William M. Tugman state park (Tugman Park) when Bradley rode his bike off the end of a bridge and suffered personal injuries. Plaintiffs filed a complaint in Coos County Circuit Court, alleging that the state negligently had failed to maintain a ramp at the end of the bridge and therefore was liable for Bradley's injuries and Bonnie's loss of consortium.

The state moved for summary judgment, arguing, among other things, that plaintiffs' claims were barred by recreational immunity under ORS 105.682(1). The state filed an affidavit and supporting documents explaining that the state did not charge a fee to enter the park; instead, the only fees that the state charged were "associated with using campsites" and "for using the gazebo facility" in the park. Otherwise, the state averred, "[i]ndividuals can enter the [park] and ride their bicycles on the trails for free." The state also argued that Bonnie Coleman had failed to provide timely notice of her tort claim as required by ORS 30.275.[1] The trial

---

[1] ORS 30.275, part of the Oregon Tort Claims Act, provides, in part:

"(1)  No action arising from any act or omission of a public body * * * shall be maintained unless notice of claim is given as required by this section.

court agreed with both of the state's arguments and granted its summary judgment motion.[2]

The Court of Appeals also agreed with the state that it was entitled to recreational immunity. *Coleman v. Oregon Parks and Recreation Dept.*, 221 Or App 484, 491, 190 P3d 487 (2008). The court concluded that the overnight camping fee imposed by the state was not a "charge" as that term is used in ORS 105.688(2)(a), and, accordingly, that the state had not forfeited its recreational immunity. *Id.* The court did not reach the state's argument regarding Bonnie Coleman's alleged failure to give notice of her tort claim. *Id.* at 487 n 2. We allowed plaintiffs' petition for review.

Before further describing the parties' arguments, we set out the recreational immunity statutes in greater detail. ORS 105.676 declares that it is the state's public policy "to encourage owners of land to make their land available to the public for recreational purposes * * * by limiting their liability toward persons entering thereon for such purposes * * *." As mentioned earlier, ORS 105.682 grants immunity to landowners who open their land to the public for recreational purposes:

"(1)   Except as provided by subsection (2) of this section, and subject to the provisions of ORS 105.688, an owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes, woodcutting or the harvest of special forest products when the owner of land either directly or indirectly permits any person to use the land for recreational purposes, woodcutting or the harvest of special forest products. The limitation on liability provided by this section applies if the principal purpose for

---

"(2)   Notice of claim shall be given within the following applicable period of time, not including the period, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity:

"(a)   For wrongful death, within one year after the alleged loss or injury;

"(b)   For all other claims, within 180 days after the alleged loss or injury."

[2] The state also argued that it was entitled to discretionary immunity under ORS 30.265(3)(c), which provides that public bodies and their officers, employees, and agents are immune from liability for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." The trial court did not reach that issue.

entry upon the land is for recreational purposes, woodcutting or the harvest of special forest products, and is not affected if the injury, death or damage occurs while the person entering land is engaging in activities other than the use of the land for recreational purposes, woodcutting or the harvest of special forest products.

"(2)   This section does not limit the liability of an owner of land for intentional injury or damage to a person coming onto land for recreational purposes, woodcutting or the harvest of special forest products."

ORS 105.688(2)(a) limits the immunity provided in ORS 105.682:

"The immunities provided by ORS 105.682 apply only if * * * the owner makes no charge for permission to use the land[.]"

ORS 105.672 (2005)[3] offers definitions for terms used in the recreational immunity provisions:

"(1)   'Charge' means the admission price or fee asked by any owner in return for permission to enter or go upon the owner's land.

"* * * * *

"(3)   'Land' includes all real property, whether publicly or privately owned.

"* * * * *

"(5)   'Recreational purposes' includes, but is not limited to, outdoor activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, nature study, outdoor educational activities, waterskiing, winter sports, viewing or enjoying historical, archaeological, scenic or scientific sites or volunteering for any public purpose project."

---

[3] Like the Court of Appeals, we cite the 2005 version of ORS 105.672 because, in 2007, the legislature amended the definition of "charge" to read:

"(1) 'Charge':

"(a) Means the admission price or fee requested or expected by an owner in return for granting permission for a person to enter or go upon the owner's land.

"(b) Does not mean any amount received from a public body in return for granting permission for the public to enter or go upon the owner's land."

ORS 105.672(1) (2007).

Plaintiffs' position before the trial court, the Court of Appeals, and this court is that, because the state charged a fee for camping—a "recreational purpose" under ORS 105.672(5)—at Tugman Park, the state was not immune from liability for their damages. Plaintiffs contend that, "[w]hen a landowner charges a fee for any use of some aspect of the land (*e.g.*, for parking, for camping, for swimming, for docking a boat, etc.), the landowner has required a payment 'for permission to use the land' and 'to go upon the land' " and, therefore, is not immune from liability. Plaintiffs argue that that result is consistent with the stated policy of the recreational immunity provisions because, when the landowner imposes any charge to use the land, the landowner no longer is making its land available for the public's recreational use without payment.

The state's position before the trial court and the Court of Appeals was that the camping fee that it charged at Tugman Park did not meet the statutory definition of "charge" because it was not a fee "to enter or go upon the owner's land." ORS 105.672(1). The state argued that "charge," as used in ORS 105.688(2)(a) to preclude recreational immunity and as defined in ORS 105.672(1), refers to money that a landowner requires a person to pay before that person is allowed access to the land, not a fee that a landowner requires a person to pay to make a particular use of the land after the person has entered the land. According to the state, the camping fee that it imposed was not an entry or access fee and therefore did not meet the statutory definition of a "charge." Thus, the state argued, it was entitled to rely on the immunity provided by ORS 105.682.

Before this court, however, the state focuses its arguments as to the meaning of ORS 105.688(2)(a) not on the word "charge" but on the words "the land." The state contends that a landowner is immune from suit if the landowner "makes no charge for permission to use *the land*," ORS 105.688(2)(a) (emphasis added), *viz.*, the specific property on which the injury occurs. The state argues that, even if the fee associated with using a campsite meets the definition of a charge under ORS 105.672(1), that fee is a charge for permission to use only the campground and not the distinct part of "the land" on which Bradley was injured. According to the

state, because Bradley was injured while using the biking trail at Tugman Park, which can be accessed by the public without charge, recreational immunity shields the state from liability for plaintiffs' injuries. If we accept that argument, the state urges, we need not consider whether the Court of Appeals correctly held that the park's camping fee was not a "charge" under ORS 105.672(1) (2005).

The issue before us is whether the state demonstrated on summary judgment that it qualified for recreational immunity as a landowner that permitted the public to use its land for recreational purposes under ORS 105.682 and that "[made] *no charge for permission to use the land*," as that phrase is used in ORS 105.688(2)(a). It is the latter qualification that plaintiffs challenge and to which we now turn.

As noted, the state adduced evidence in support of its motion for summary judgment that the state required that campers pay a fee to camp at Tugman Park. To determine whether that fee is a "charge for permission to use the land," we examine the text and context of that statutory provision to discern the legislature's intent. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (illustrating process).[4]

We begin with the word "charge." Charge is statutorily defined as "the admission price or fee asked by an owner in return for permission *to enter* or *go upon* the owner's land." ORS 105.672(1) (emphases added). The parties agree, as do we, that that camping fee was not an "admission price" and was not "in return for permission to enter" the park. The question then is whether the camping fee is a fee to "go upon" the state's land. The Court of Appeals relied on the definition of "go" and "upon" and explained that those words mean "to move on a course over or in contact with the land." *Coleman*, 221 Or App at 490 (citing *Webster's Third New Int'l Dictionary* 971, 2517 (unabridged ed 2002)). The court concluded that the camping fee was not such a fee:

---

[4] When the parties request that the court do so, the court also will consider legislative history and may utilize that history if the history is helpful to the court's analysis. *Gaines*, 346 Or at 172. In this case, the parties did not refer this court to relevant legislative history, and the court does not deem it necessary to consult the legislative history of the statutes at issue.

"Payment of a fee is required to engage in a specific activity in those areas—that is, camping overnight—and presumably to exclude others from a particular campsite. But payment of a fee is not required to move on a course over and in contact with an area designated as a campsite. In other words, payment of the fee merely entitles a member of the public to do something on the land while moving about on the land that another may not do."

*Id.* at 491 (footnote omitted). Simply stated, the Court of Appeals ruled that the legislature intended to preclude immunity for a landowner that exacts a *fee to enter* its land to use that land for a recreational purpose, but to grant immunity to a landowner that exacts a *fee for that recreational use.* For reasons that we will explain, we conclude that the legislature did not intend that result.

First, the legislature granted immunity to an owner of land that "permits any person to *use* the land for recreational purposes[.]" ORS 105.682(1) (emphasis added). Such landowners are immune from claims for damages that arise out of "the *use* of land for recreational purposes[.]" ORS 105.682(1) (emphasis added). Because it is the landowners' permission to use and the public's use that give rise to recreational immunity, it is illogical to suppose that the legislature disregarded fees that landowners exact for permission to use or for the public's use of their lands in imposing limitations on the application of recreational immunity.

Second, the words of the statute that follow the word "charge" are "for *permission to use."* ORS 105.688(2)(a) (emphasis added). Unless the statutory definition of the word "charge" clearly excludes fees charged for permission to use land, which it does not, it appears from the text of the statute that the legislature intended the meaning of the word "charge" to include fees exacted for use of land as well as fees exacted for entry to land.

As noted, reference to the statutory and dictionary definitions of the word "charge" discloses that "charge" means a fee to move over or on land. A person moves over or on land when he or she enters the land, but a person also moves over or on land when he or she makes use of that land for recreational purposes. In our view, the legislature's use of

the defined word "charge" and the phrase "for permission to use the land" are not inconsistent. "Charge" encompasses both fees to enter land and fees to use land as long as that use entails moving over or on the land for a recreational purpose.

Our interpretation of the word "charge" to encompass fees for recreational use of land is supported by the legislature's use of that same word in ORS 105.688(2)(c). That subsection provides that recreational immunity applies only if "[t]he owner *charges* no more than $75 per cord for permission to *use* the land for woodcutting." (Emphases added.) In paragraph (c), the legislature used the defined term "charge" to mean a fee to *use* land for a particular purpose, woodcutting. ORS 105.688(2)(a) and (c) together require that, to qualify for immunity, a landowner must impose *no* fee to enter or use its land, except a fee of less than $75 per cord to use the land for woodcutting. Had the legislature wanted to extend immunity to landowners that impose minimal fees for uses of land other than woodcutting, such as camping, the legislature certainly could have done so.

In this case, the state conceded that it charged a fee to camp at Tugman Park. A person moves over and on the land to camp on it, and camping is a recreational purpose. Therefore, the state made a charge for permission to use Tugman Park and thus forfeited recreational immunity. It does not matter that the use in which plaintiff was engaged at the time of his injury was not the precise use for which the state exacted a fee. ORS 105.682(1) provides that, if a landowner is entitled to immunity from injuries that arise out of the use of land for recreational purposes, immunity extends as long as the injured person's principal purpose for entry is recreational, even if the person was engaged in other non-recreational activity at the time of injury. So, for instance, if a person enters a park to swim, but is injured while changing a truck tire, the landowner nevertheless is entitled to recreational immunity. We interpret ORS 105.688(2)(a) similarly. To be entitled to immunity, the landowner must make *no* charge for permission to use the land. If the landowner makes a charge for permission to use its land, immunity does not apply, even if the injured person is not engaged in the use that was the basis for the charge at the time of injury. So, as in this case, if the landowner makes a charge to use a park for

camping, the landowner forfeits its immunity, even if a camper is injured while biking.

The state contends, however, that the statutory provision at issue contains two additional words that compel a different result: "the land." The state argues that, even if it made "a charge for permission to use" Tugman Park, that charge was only for permission to use the campsites in its park, not for permission to use the hiking/biking trails that were also located in the park, accessible by the public at no charge. Plaintiff was injured on those trails, and, the state asserts, there is no charge for permission to use that "land."

Like the word "charge," the word "land," as used in ORS 105.688(2)(a), is a defined term, meaning "all real property, whether publicly or privately owned." ORS 105.672(3). The state argues that "real property" includes both an entire parcel of land and any distinct, identifiable piece of land within that parcel, and that, by use of the article "the," the legislature conditioned immunity on a landowner's making no charge for use of "the" distinct part of the land on which the injury occurred. Why, queries the state, would the legislature preclude recreational immunity for the owner of a 100-acre property that charged to use an equestrian riding center located on 10 acres of that land, but made 90 acres available to the public for free, when the plaintiff was injured hiking on the separate and distinct 90 acres?

Although the state poses an interesting hypothetical question, we need not answer it in this case. The state charged a fee to camp at Tugman Park. As campers, plaintiffs were entitled to use all of Tugman Park, including its bike trails. As previously explained, having charged for "permission to use" its park, the state forfeited recreational immunity even though plaintiff was injured while engaged in a recreational use—bicycling—that was not the use that was the basis for the charge—camping.

By so concluding, we do not necessarily reject the state's argument that "the land," as that phrase is used in ORS 105.688(2)(a), may refer to a specific, separate, and distinct piece of real property upon which a plaintiff is injured in circumstances other than those presented on summary judgment in this case. Instead, we emphasize that the state did

not establish on summary judgment that it had divided Tugman Park into two separate pieces of land with distinct, identifiable boundaries, one of which could be used only by persons who paid a charge and one of which was open to the public for free.[5] The state also did not establish that, as a camper, plaintiffs' use was limited to the piece of land associated with the charge.

Because the state did not establish that it made "no charge for permission to use" Tugman Park, it did not establish that it was entitled to recreational immunity under ORS 105.682 or that it was "entitled to prevail as a matter of law." ORCP 47 C. The trial court therefore erred in granting summary judgment to the state on that basis. We remand to the Court of Appeals for consideration of the state's argument regarding Bonnie Coleman's failure to give notice of her tort claim, an issue that that court did not reach.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.

**BALMER, J.,** dissenting.

The legislature has declared that it is the public policy of the State of Oregon "to encourage owners of land to make their land available to the public for recreational purposes * * *." ORS 105.676. To that end, the legislature has provided that such landowners are "not liable * * * for any personal injury, death or property damage that arises out of the use of the land for recreational purposes * * *." ORS 105.682(1). That immunity is available, however, only if "[t]he owner makes no charge for permission to use the land." ORS 105.688(2)(a). In this case, the majority holds that, if a landowner charges a fee for the use of one part of its land, the landowner may not assert recreational use immunity as to a user who pays the fee, even for injuries that occur on other land that is open for recreational use without any charge. In my view, that interpretation is not supported by the statutory wording and will significantly limit the immunity that

---

[5] The dissent argues that the campground was a distinct part of the park because it had an entry point, showers, and restrooms, but the record does not establish that the campground had identifiable boundaries.

the legislature intended to confer on landowners who make their land available to the public for recreational purposes. As a result, the legislature's policy choice will be thwarted. For those reasons, I respectfully dissent.

Although certain facts in this case are disputed, others are not, and—based on my analysis of the legal issues— the facts that are undisputed support the trial court's entry of summary judgment for the state. It is undisputed that plaintiffs and their friends visited Tugman State Park, that they intended to camp at one of the designated campsites at the campground there, and that plaintiffs (or their friends) paid the fee that is required to secure a campsite and were assigned campsite C22 in the campground. It also is undisputed that, although the state charges a fee for a campsite, the state charges no fee to enter the park or to use the park trails for hiking or biking. It is undisputed that, after arriving at Tugman State Park and drinking beer, plaintiff Bradley Coleman and a friend (as the complaint alleges) "decided to explore the amenities of the State Park on their mountain bikes." They "rode down a nice wood chip trial [sic] along the lake that was open without restriction." Along the trail, Coleman and his friend "came to a small wooden bridge that did not have a ramp on the end from which [they were] approaching." They "lifted their bikes onto the bridge and rode across" to the trail on the other side. After proceeding up the trail on the other side "about 1/4 mile" beyond the bridge, Coleman and his friend turned around, "descended back down the trail toward the bridge," and recrossed the bridge. Coleman rode his bike back across the bridge, but fell at the end, causing himself serious injury.

Coleman and his wife sued the state, alleging that its negligence was the cause of his injuries. In its answer, the state asserted several affirmative defenses, including the so-called "recreational use" immunity at issue on review. As noted, ORS 105.682(1) provides that "an owner of land is not liable" for injuries that "arise[ ] out of the use of the land for recreational purposes * * *." However, that immunity is available only if "[t]he owner makes no charge for permission to use the land." ORS 105.688(2)(a). The majority concludes that, because "[t]he state charged a fee to camp at Tugman Park," recreational use immunity does not apply. 347 Or at

103. However, that conclusion is at odds with the text of the recreational use immunity statute and would produce inconsistent and anomalous results in many cases.

The majority first rejects the argument that the state relied on below and that the Court of Appeals accepted. That argument is that, because the charge that plaintiffs (or their friends) paid was not a charge to *enter* or *go upon* the owner's land," *see* ORS 105.672(1)(a) (defining "charge" for purposes of ORS 105.672 to 105.696) (emphasis added), but rather was a charge to engage in the particular recreational use of "camping," the fact that the state charged the fee did not preclude it from asserting recreational immunity. I agree with the majority that, as used in this statute, the word "charge" includes both "fees to enter land and fees to use land as long as that use entails moving over or on the land for a recreational purpose." 347 Or at 101-02.

However, the majority also rejects the argument that the state makes in this court: that, because the state's charge was for permission to use a campsite at the park, and the state does not charge a fee to enter or use the park or to hike or bike on the trails in the park, the state did not charge for permission to use "the land" where Coleman's injury occurred. For that reason, the state argues, it may assert recreational immunity. To me, that argument is persuasive.

The relevant statute provides immunity from liability for an injury "that arises out of the use of *the land* for recreational purposes, * * * when the owner of land either directly or indirectly permits any person to use *the land* for recreational purposes * * *." ORS 105.682(1) (emphasis added). That immunity applies only if "[t]he owner makes no charge for permission to use *the land*." ORS 105.688(2)(a) (emphasis added). As I read the statute, if a landowner imposes a charge for permission to use one part of its land, the immunity does not apply to an injury that arises from the recreational use of that land. However, if the landowner does not impose a charge for the recreational use of "the land" on which a user's injury arose, the landowner may assert recreational use immunity.

Plaintiffs' position is that if a landowner charges a fee to use *any* part of the owner's land, then the landowner may not assert recreational use immunity as to injuries that may have occurred anywhere on the landowner's land. However, that reading ignores the references in the statutes to "*the* land"—"*the* land" that the landowner permits any person to use for recreational purposes, ORS 105.682(1); "*the* land" that is being used principally for such purposes when an injury arises, *id.*; "*the* land" that the landowner permits any person to use without a charge. ORS 105.688(2)(a). The legislature's use of the definite article "the" suggests that the legislature did not intend the immunity (or lack of immunity) to apply to *all* land that may be owned by a landowner, but rather to some specific part of the landowner's land—and immunity (or lack of immunity) will depend on whether the landowner charges a fee for the use of that specific land. The most sensible reading of the statute is that it confers immunity on a landowner for injuries that occur on the *particular* land that the landowner has permitted the public to use for recreational purposes, but that immunity is not available if the landowner charges a fee for the use of that particular land.

The majority cites the statutory definition of "land," for purposes of recreational immunity, ORS 105.672(3), which provides that " '[l]and' includes all real property, whether publicly or privately owned." That definition provides no assistance in this case. The definition makes clear that the statute applies to both public and private land and to what Oregon law includes within the term "real property"— including, for example, structures that come within the definition of real property. Here, however, no one argues that the statute does not apply because the accident occurred on property owned by the state or because it occurred on a constructed bridge, rather than on a trail. The statutory definition of "land" thus does not support the majority's position.

The majority concedes that, if the state "had divided Tugman Park into two separate pieces of land with distinct, identifiable boundaries, one of which could be used only by persons who paid a charge and one of which was open to the public for free," 347 Or at 104, then the state might be able to

assert recreational immunity as to injuries that occur on the "free" land.[1] The majority concludes, however, that the state did not divide "the land" in a way that would permit it to assert immunity for Coleman's injury, which occurred on a bike trail that anyone could use for free, when it had charged him (or his friends) for the use of a campsite.

The majority's conclusion seems to rest upon one of two premises, neither of which is persuasive. First, the majority states that "[a]s campers, plaintiffs were entitled to use all of Tugman Park, including its bike trails," 347 Or at 103, and concludes that recreational use immunity does not extend to a bike trail that those who pay camping fees are permitted to use. The majority's position ignores the fact that, although, as campers, plaintiffs were entitled to use the entire park, including the bike trails, they would have been entitled to use the bike trails (and all the rest of the park except the campsites and the separately rented yurts and gazebo) even if they had not been campers and *even without* paying any fee—like all other members of the public. Thus, under the majority's reasoning, *if* a person decides to rent a campsite (or to rent the gazebo), the state may *not* assert recreational immunity as to injuries suffered by that person while riding on a bike trail, but the state *may* assert such immunity as to a person who does not rent a campsite and who incurs an identical injury in an identical place on the land. For example, under the majority's theory, if a friend of Coleman's making a day visit to Tugman Park, for which there is no charge, had joined Coleman on his bike ride, and both had been injured on the same bridge, the state could assert recreational immunity as to Coleman, but not as to the friend. That anomalous result is inconsistent with the immunity statute and with the public policy underlying it.

Alternatively, the majority opinion could be read to suggest that if the state had posted notices or otherwise clearly delineated "the land" for which a charge was imposed for recreational uses from "the land" for which no charge was

---

[1] Arguably, the state did just that. A person who fails to pay the fee for a campsite may not stay at the campground. As discussed in the text, the maps in the summary judgment record and the allegations in the complaint make clear that the campground is separate from the bike trail where Coleman was injured.

imposed, then the state might be able to assert recreational immunity as to injuries that arose from recreational activities on the latter. The statute, of course, makes no reference to notices, signs, or fences. It simply states that, if there is no charge for recreational use of "the land," the immunity may be asserted as to injuries that occur on "the land." As I read the summary judgment record, Coleman's injury occurred when he was using "the land" for which the state makes no charge—that is, the bicycle trail in Tugman State Park that is described in the complaint. As noted, it is undisputed that the state makes no charge for the day use of the park or the use of the trails. It charges for campsites, extra vehicles at overnight campsites, and rental of yurts or the gazebo. Maps that are part of the summary judgment record show that the campsite where plaintiffs stayed is in a distinct location from the trail over Clear Creek where the accident occurred. Plaintiffs' campsite was in the "campground," a separate area with a registration booth at the entry point, showers, and restrooms. The complaint itself, quoted above, describes Coleman's ride away from the campground—down a wood chip trail along the lake, and across a bridge.

The summary judgment record demonstrates that Coleman's accident did not occur at the campsite for which he or his friends were charged a fee—or at the campground where the campsite was located. It did not occur on "the land" for which the state charges a fee for those who want to engage in recreational activities there. Rather, the accident occurred on a trail some distance away from the campsite. It occurred on "the land" that the state permits the public to use for recreational purposes without a fee. For that reason, the state may assert the recreational immunity defense available under ORS 105.682(1). I dissent from the majority's contrary conclusion.

Kistler and Linder, JJ., join in this opinion.