216 October 15, 2025 No. 899

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Jesse FREEBY,
an individual,
*Plaintiff-Appellant,*

*v.*

HOODOO SKI BOWL DEVELOPERS, INC.,
an Oregon corporation, dba Hoodoo Ski Area,
*Defendant-Respondent.*

Linn County Circuit Court
21CV34513; A180522

Thomas McHill, Judge.

Argued and submitted December 13, 2024.

Timothy I. Crawley argued the cause for appellant. Also on the briefs was Crawley, LLP.

Brad C. Stanford argued the cause for respondent. Also on the briefs were Trish A. Walsh and Farleigh Wada Witt.

Before Tookey, Presiding Judge, Kamins, Judge, and Nakamoto, Senior Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Plaintiff Jesse Freeby appeals from a judgment dismissing his personal injury negligence claim following the grant of summary judgment to defendant, Hoodoo Ski Bowl Developers, Inc. Plaintiff was injured when he slipped and fell in defendant's parking lot. The appeal presents a single question: Does a ski area operator qualify for recreational use immunity despite charging a fee to use its ski lifts? Because we conclude that recreational use immunity does not apply, the trial court erred by determining that defendant was immune from suit. We also address defendant's cross-assignment of error, in which it claims that the trial court erred in striking down certain defenses based on statutes designed to limit liability of ski area operators. Because plaintiff was neither skiing nor in a ski area when he was injured, we conclude that the trial court did not err in that respect. We reverse and remand.

"We review a trial court's grant of summary judgment for errors of law and will affirm if there are no genuine disputes about any material fact and the moving party is entitled to judgment as a matter of law." *Beneficial Oregon, Inc. v. Bivins*, 313 Or App 275, 277, 496 P3d 1104 (2021) (internal quotation marks omitted). In so doing, "we view the facts in the light most favorable to the nonmoving part[y]," and we "examine whether no objectively reasonable juror could find in their favor on the question at issue." *Id.* In making that determination, "we examine 'the pleadings, depositions, affidavits, declarations, and admissions on file.'" *Id.* (quoting ORCP 47 C). We recite the facts in accordance with that legal standard. With regard to the trial court's construction of a statute, we review for errors of law. *Stedman v. Dept. of Forestry*, 316 Or App 203, 204, 502 P3d 234 (2021).

The key facts are relatively few: Plaintiff arrived at defendant's ski area for a day of snowboarding. Defendant is the operator of a ski area. Defendant does not charge a fee to park, enter, or ski in the ski area, and allows skiers to hike up to the top of its trails and ski down free of charge. Defendant does, however, charge a fee for skiers to ride its chairlifts. After parking his car, and while walking through

the parking lot in his snowboarding boots to purchase a lift ticket, plaintiff slipped and fell, sustaining severe injuries.[1]

Plaintiff then sued defendant for negligence. Defendant raised several affirmative defenses, including the statutory defense of recreational use immunity, ORS 105.682. That defense provides immunity to landowners from tort suits, like plaintiff's, who open their land to recreational use free of charge. Defendant argued that the immunity applied—notwithstanding its chairlift fee— because defendant does not charge for use of the parking lot (where plaintiff's injury occurred), does not charge admission in exchange for going into the ski area in general, and merely charges for the privilege of riding on a chairlift—not for using the land. Plaintiff countered that recreational use immunity was not available because a ticket for a chairlift located on defendant's land would necessarily be a "charge" to "enter or go upon" that portion of defendant's land. ORS 105.672(1)(a).

The trial court agreed with defendant that defendant's chairlift tickets did not constitute a "charge" to use the land under the statute, granted summary judgment to defendant, and dismissed the case. This appeal followed.

On appeal, the parties reiterate their arguments. Plaintiff argues that defendant is not immune because defendant's ski lifts and the area surrounding them are "land," as defined by the statutory text and case law, and defendant's charge to use the chairlifts is a charge to "enter or go upon" the land. Defendant contends that defendant's ski lifts are not land, but rather removable fixtures, and, in any event, a charge for the privilege of riding a chairlift is not the same thing as a charge to "go upon" land. For the following reasons, we agree with plaintiff.

Before explaining the parties' arguments more thoroughly, we start by providing the relevant statutory

---

[1] On appeal, the parties dispute whether the record on summary judgment demonstrates *what* plaintiff slipped on, or whether plaintiff was walking on a path through the parking lot designated by defendant. We need not resolve that issue because, regardless of which party is correct, our statutory analysis compels reversal of the grant of summary judgment and that we affirm the trial court ruling striking defendant's affirmative defenses.

framework. The legislature enacted recreational use immunity statutes "to encourage owners of land to make their land available to the public for recreational purposes * * * by limiting their liability toward persons entering thereon for such purposes * * *." ORS 105.676. As mentioned, the legislature has carried out this policy by limiting liability under certain circumstances for landowners who open their land to the public for recreational use. ORS 105.682, in relevant part, provides:

> "[A]n owner of land is not liable in * * * tort for any personal injury * * * that arises out of the use of the land for recreational purposes * * * when the owner of land either directly or indirectly permits any person to use the land for recreational purposes * * *. The limitation on liability provided by this section applies if the principal purpose for entry upon the land is for recreational purposes * * * and is not affected if the injury * * * occurs while the person entering land is engaging in activities other than the use of the land for recreational purposes * * *.

However, such immunity is not available when a landowner "makes any charge for permission to use the land for recreational purposes." ORS 105.688(3).[2]

On appeal, the parties have—helpfully—made certain stipulations that narrow the issue before us. The parties agree that recreational use immunity presumptively applies to defendant—that is, defendant is an owner of land, defendant directly permits any person to use the land for recreational purposes, defendant's parking lot constitutes land, plaintiff was injured on defendant's land, and the principal purpose of plaintiff's entry onto defendant's land was recreational. The parties also agree—as do we—that it is irrelevant that plaintiff was not engaged in recreational activity at the time of injury. *Coleman v. Oregon Parks and Recreation Dept.*, 347 Or 94, 102, 217 P3d 651 (2009) ("[Recreational use] immunity extends as long as the injured person's principal purpose for entry is recreational, even if the person was engaged in other nonrecreational activity at the time of injury."). Similarly, it is irrelevant that plaintiff

---

[2] ORS 105.688 and ORS 105.672 have been amended since plaintiff's injury occurred; however, because those amendments do not affect our analysis, we refer to the current version of the statutes.

had yet to purchase a lift ticket at the time of his injury. *See* ORS 105.672(1)(a) (charge means "the admission price or fee requested *or expected* by" a landowner (emphasis added)). Thus, the only issue before us is whether the lift ticket qualifies as a "charge for permission to use the land for recreational purposes" under ORS 105.682. Upon examining the text and context of the statutory provision, *see State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (explaining analytical framework), we conclude that it does.

The relevant statutory definition of charge is a "fee requested or expected by an owner in return for permission to enter or go upon the owner's land." ORS 105.672(1)(a). Defendant argues that the charge provision is inapplicable, because defendant only requests or expects a fee for use of the chairlifts, which, in defendant's view do not qualify as "land" as contemplated in the recreational use immunity statutes. Defendant contends that the chairlifts are more like removable fixtures that can be severed without injury to the land, as opposed to actual land. We disagree.

As defined in ORS 105.672(3), "'[l]and' includes all real property, whether publicly or privately owned." "Real property" is not defined in the recreational use immunity statutes, but we have previously construed its meaning broadly: "'Land and *anything* growing on, attached to, or *erected on it*, excluding anything that may be severed without injury to the land.'" *Brewer v. Dept. of Fish and Wildlife*, 167 Or App 173, 178, 2 P3d 418 (2000), *rev den*, 334 Or 693 (2002) (quoting *Black's Law Dictionary* 1234 (7th ed 1999)) (emphases added). In *Brewer*, that construction led us to conclude that "land," as defined in ORS 105.672(3), encompassed a fish migration dam and the waters below it. *Id.* In other words, in addition to the surface land, real property includes buildings and fixtures erected on the land, such as a dam. *Id.* (citing recreational use immunity statute and noting it "extend[s] to *fixtures* such as a dam *** and the waters below it" (emphasis added)).

That statutory construction—one that is inclusive of fixtures and structures erected on the land—is consistent with the scope of recreational use immunity described in ORS 105.688(1)(b). That subsection provides that

recreational use immunity applies to "[a]ll roads, bodies of water, watercourses, rights of way, buildings, fixtures and structures on the land described in paragraph (a) of this subsection." We are unpersuaded that the legislature would specifically encompass structures on the land within the scope of recreational use immunity while simultaneously excluding those same structures from the definition of land for purposes of the "charge" exception. It would make little sense for a landowner to receive immunity for structures on its land, but somehow escape liability even when it charges the public to use or go upon those structures.

Those structures include defendant's ski lift itself, as a structure erected on the land (that cannot be removed without injuring the land). *See Brewer*, 167 Or App at 178 (real property excludes anything that may be severed without injury to the land); *see also* Priv Ltr Rul 2015-21-006 (May 22, 2015) (in certain federal tax contexts, ski lift towers are considered "real property" because they are "large steel structure[s]" that are "designed and constructed to remain permanently in place" and removing them "requires significant time and expense."). Defendant's argument that the ski lift can be removed "without injury to the land" proves too much: by that logic, any structure (with enough time and money) can be removed and the land brought back to its near-original state, making the "charge" exception meaningless as to similar fixtures and structures on the land.

Next, assuming the chairlift is "land," the parties dispute whether riding a chairlift constitutes "go[ing] upon the owner's land," as that phrase is used in the "charge" definition, ORS 105.672(1)(a): "the admission price or fee requested or expected by an owner in return for granting permission for a person to enter or go upon the owner's land." Like the statutory definition of land, the definition of "charge" is broad. The phrase "go upon the land" means "to move on a course over or in contact with the land." *See Coleman v. Oregon Parks and Recreation Dept.*, 221 Or App 484, 490, 190 P3d 487 (2008), *rev'd on other grounds*, 347 Or 94, 217 P3d 651 (2009) (citing *Webster's Third New Int'l Dictionary* 971, 2517 (unabridged ed 2002)) (internal quotation marks omitted) (adopting that definition); *Coleman*, 347

Or at 102 ("'Charge'" encompasses both fees to enter land and fees to use land as long as that use entails *moving over or on the land* for a recreational purpose." (Emphasis added.)). Defendant argues, at various points, that its lift ticket fee is "an optional fee in exchange for use of an optional convenience, a chair," and its charge is merely for "the privilege of riding in the chair." Having already concluded that the chairlifts constitute "land," we easily conclude that the fee to ride the chairlift is a fee to "move over" the land. A person does not pay for the privilege of sitting in a stationary chairlift; the chairlift's benefit is *specifically* for moving over land.

In arguing otherwise, defendant relies primarily on cases from other jurisdictions. For example, defendant directs us to consider *Jones v. United States*, 693 F2d 1299 (9th Cir 1982), a Ninth Circuit case construing Washington law, in which the plaintiff rented an inner tube for $1 and then used the tube for sledding. The plaintiff there contended that the rental fee for the tube constituted a charge for the use of the land, thereby denying the defendant's immunity under Washington's recreational use immunity statute. The Ninth Circuit disagreed, holding that the fee was merely to rent an inner tube, and not to use the land. *Id.* at 1303-04. We are not bound by the Ninth Circuit's interpretation of Washington law, and that case is not analogous to this one: an inner tube clearly would not qualify as "real property" under our definition of "land." *See also Stedman*, 316 Or App at 214 (fee for ATV operating permit not a "charge" because no quid pro quo exchange between the fee assessed and going onto land).

Perhaps more on point is *Hardy v. Loon Mountain Recreation Corp.*, 276 F3d 18, 21 (1st Cir 2002). There, the First Circuit held that, under New Hampshire's recreational use immunity law, a $5 "gondola fee" charged by an operator of a recreational area to access the top of a mountain did not destroy the operator's recreational immunity, notwithstanding a similar "charge" exception, because the operator allowed guests to hike up to the mountain for free. *Id.* ("Whatever mode of transportation [the plaintiff] used to arrive at the summit is immaterial: the attractions there were free to all."). While those facts may be more on point, the rationale cannot be squared with Oregon law. In *Hardy*,

the term "charge" was not defined by the New Hampshire statute, so the court there construed it as "an actual admission fee paid for permission to *enter* the land for recreational purposes." *Id.* at 20 (emphasis added). That definition is narrower than our statutory definition of "to enter *or go upon*" land, ORS 105.672(1)(a) (emphasis added), and far less broad than "fees to use land as long as that use entails *moving over or on the land* for a recreational purpose." *Coleman*, 347 Or at 102 (emphasis added).[3]

Finally, we address defendant's cross-assignment of error. In that assignment, defendant argues that the trial court erred in striking its initial affirmative defenses based on a different set of immunity statutes, ORS 30.970 - 30.990 (the Skiing Activities statutes).[4] Those statutes generally serve to limit or reduce the liability of ski area operators by defining the duties and risks assumed by skiers. *See generally Nolan v. Mt. Bachelor, Inc.*, 317 Or 328, 335-36, 856 P2d 305 (1993) (explaining legislative history and intent behind Skiing Activities statutes). Reviewing for legal error, we conclude that the trial court did not err.

---

[3] The *Hardy* court also relied on other federal cases that held that camping fees were not "charges" under various other states' recreational use immunity statutes. *See Hardy*, 276 F3d at 20 (citing *Wilson v. United States*, 989 F2d 953 (8th Cir 1993)). That proposition, however, is foreclosed by *Coleman*. *See* 347 Or at 103 (fee to camp in state park is a "charge" under recreational use immunity statutes).

Moreover, under *Coleman*, it is apparently irrelevant that the injury here occurred on a different piece of land than the land associated with the charge. *See id.* at 102-04 (camping fee charged by state to camp in state park prevented grant of summary judgment on the basis of recreational use immunity, notwithstanding the fact that plaintiff-camper's injury occurred in bike trails open to the public in a different area of the park, because state did not establish that it made "no charge for permission to use" the park).

Finally, we note that the legislature, following *Coleman*, enacted a law that extends immunity to a landowner that "charges for permission to use the owner's land for one or more specific recreational purposes," so long as "the owner provides notice" "as part of a receipt, or by such other means as may be reasonably calculated to apprise a person" of the "portion of the land the use of which is subject to the charge, and the immunities provided under ORS 105.682 for the remainder of the land." ORS 105.688(4) - (8); *see also* Staff Measure Summary, HB 3673 A, Feb 16, 2010 (citing *Coleman* as the reason for the legislation).

[4] Although the statutes only discuss activities relating to skiing, plaintiff does not dispute that they apply to snowboarding as well. We therefore assume that to be the case without deciding the issue. *See Stiles v. Freemotion, Inc.*, 185 Or App 393, 396 n 3, 59 P3d 548 (2002), *rev den*, 335 Or 504 (2003) (same).

Defendant's two affirmative defenses were that (1) plaintiff assumed the risks of skiing under ORS 30.975[5] and was injured due to one of those risks, and (2) plaintiff breached one of the duties of skiing under ORS 30.985.[6] Whether plaintiff's conduct—walking across defendant's parking lot wearing snowboarding boots—is covered by those statutes is an issue of statutory interpretation. We address each statute in turn.

A.  *ORS 30.975 (Assumption of the Risk)*

Skiers assume certain risks while skiing. ORS 30.975. Specifically, "an individual *who engages in the sport of skiing* *** accepts and assumes the inherent risks of skiing insofar as they are reasonably obvious, expected or necessary." *Id.* (emphasis added). The word "engage" has several definitions, but most likely here means "to take part : participate." *Webster's* at 751. As the plain text of the statute suggests, an individual only assumes those risks when they actually participate in the sport of skiing. A person walking in the parking lot of a ski area in snowboard boots, like plaintiff, is not "engag[ing]" in skiing.

That commonsense interpretation is consistent with the statutory definition of "inherent risks of skiing." That definition only describes risks that pertain to the actual act of skiing:

> "those dangers or conditions which are an integral part of the sport, such as changing weather conditions, variations or steepness in terrain, snow or ice conditions, surface or subsurface conditions, bare spots, creeks and gullies, forest growth, rocks, stumps, lift towers and other structures and their components, collisions with other skiers and a skier's failure to ski within the skier's own ability."

ORS 30.970(1). In addition, although we have not previously construed what it means to "engage[] in the sport of skiing" for the purposes of ORS 30.975, every case applying

---

[5] ORS 30.975, in relevant part, provides that "an individual who engages in the sport of skiing, alpine or nordic, accepts and assumes the inherent risks of skiing insofar as they are reasonably obvious, expected or necessary."

[6] ORS 30.985(1) lists 12 duties of skiers. Violation of any of those duties entitles the ski area operator to withdraw the violator's privilege of skiing. ORS 30.985(2).

the Skiing Activities statutes has all involved a person actively skiing or snowboarding. *Becker v. Hoodoo Ski Bowl Developers, Inc.*, 269 Or App 877, 346 P3d 620 (2015); *Bagley v. Mt. Bachelor, Inc.*, 356 Or 543, 340 P3d 27 (2014); *Stiles v. Freemotion, Inc.*, 185 Or App 393, 59 P3d 548 (2002), *rev den*, 335 Or 504 (2003); *Steele v. Mt. Hood Meadows Oregon Ltd.*, 159 Or App 272, 974 P2d 794, *rev den*, 329 Or 10 (1999); *Nolan v. Mt. Bachelor, Inc.*, 317 Or 328, 856 P2d 305 (1993); *Pierce v. Mt. Hood Meadows Oregon, Ltd.*, 118 Or App 450, 847 P2d 909, *rev den*, 317 Or 583 (1993); *Jessup v. Mt. Bachelor, Inc.*, 101 Or App 670, 792 P2d 1232, *rev den*, 310 Or 475 (1990).

Finally, the legislative history of the Skiing Activities statutes only includes legislative discussion on the risks skiers assume when they are actively skiing. *See, e.g.*, Meeting Minutes, Senate Committee on Agriculture & Natural Resources, SB 329, Feb 2, 1979 at 3 (comments of Rep Kip Lombard regarding "accidents [oc]curring on the slopes"). There is no indication that the legislature was concerned about conduct occurring in the parking lot. Thus, the "assumption of the risk" defense does not apply because plaintiff was not engaged in skiing at the time of the injury.

## B.   *ORS 30.985 (Duties of Skiers)*

Additionally, defendant argues that plaintiff breached one of the duties of skiing under ORS 30.985. We disagree. Plaintiff did not yet have any of the duties of skiers listed in ORS 30.985 because he was not in a ski area. A "skier" is defined by statute as "any person *who is in a ski area* for the purpose of engaging in the sport of skiing or who rides as a passenger on any ski lift device." ORS 30.970(3) (emphasis added). A "ski area" is "any area *designated and maintained* by a ski area operator *for skiing*." ORS 30.970(4) (emphases added). Defendant argues that the parking lot in which plaintiff was injured is such an area. Defendant's argument, as we understand it, is that it designates and maintains its parking lot for skiing because it allows skiers to ski through the parking lot, skiers indeed do ski through the parking lot, and the parking lot is an integral part of the sport of skiing.

"Designate" and "maintain" are not defined by statute, so the legislature likely intended them to have their

ordinary dictionary definitions. *See State v. Eastep*, 361 Or 746, 751, 399 P3d 979 (2017) ("When statutes do not define their terms, we assume that the legislature intended them to have their plain, ordinary meanings."). "Designate" has several definitions, but the most applicable ones here are "to point out the location of" or "specify." *Webster's* at 612. "Maintain" means "to keep in a state of repair." *Id.* at 1362. Defendant does not specify that the parking lot is for skiing, nor does defendant keep the parking lot in a state of repair for skiing. Rather, the parking lot is designated and maintained for parking. Although defendant insists that some people do ski through its parking lot to get to the mountain and contends that the parking lot area is integral to skiing at Hoodoo, skiing is not what the parking lot is "designated" or "maintained" for. Similarly, there is no support for the contention—in either case law or legislative history—that the statute was intended to include a parking lot within a "ski area." Thus, the trial court did not err in striking defendant's affirmative defenses based on the Skiing Activities statutes.

Reversed and remanded.