Argued and submitted July 22, affirmed September 30, 2009

# Mike KELLY,
*Plaintiff-Appellant,*

*v.*

# Samuel Israel HOCHBERG,
*Defendant-Respondent.*

Josephine County Circuit Court
06CV0508; A136949

217 P3d 699

Jeffrey A. Long argued the cause for appellant. With him on the brief was Jeffrey Long & Associates.

James M. Callahan argued the cause for respondent. With him on the brief was Callahan & Shears.

Before Edmonds, Presiding Judge, and Landau, Judge, and Sercombe, Judge.

LANDAU, J.

## LANDAU, J.

This is a legal malpractice action in which plaintiff contends that defendant, his former attorney, negligently handled his personal injury action by failing to assert claims against the owner of the land where the injury occurred. The trial court concluded that the owner of the land was immune from liability for injuries that arose out of the use of its property for recreational purposes and that, because plaintiff's injuries arose out of such recreational use, no personal injury action could have been successfully maintained against the owner. Accordingly, the court granted summary judgment in favor of defendant. Plaintiff appeals, arguing that the court erred in concluding that the activity that he was engaged in at the time of his injuries amounted to the sort of recreational use that afforded the owner of the land immunity from liability. We affirm.

The relevant facts are not in dispute. Plaintiff participated in an annual gathering of motorcycle riders from the west coast, known as the Iron Horse Rodeo. The gathering was located in Josephine County, near the town of Williams. The gathering included, among other things, a number of events and contests. One such event was the Poker Run. The Poker Run consisted of a game of five-card stud poker in which each player rides a motorcycle on a predetermined, five-leg course. At the end of each leg, each player draws a card. At the end of the course, the players compare hands, and the one with the best hand wins a pot derived from the entry fees paid by the players.

In this case, the Poker Run route started and ended at Lake Selmac. The first leg of the route followed the Cedar Flat Road, located on property owned by the federal Bureau of Land Management (BLM), to Williams. The BLM road was open to the public year-round, without charge, for commercial, recreational, and administrative access.

Plaintiff signed up for the Poker Run, paid the entry fee, and participated in the first leg of the event. During that first leg, however, he was injured when his motorcycle collided with an automobile. He retained defendant to represent

him in an action for damages for the injuries that he sustained in the accident. Defendant filed a complaint for negligence against the driver of the automobile and Josephine County, who defendant thought—in error—was the owner of the road at the location where the accident occurred. The complaint alleged that, among other things, the accident was caused by the fact that vegetation along the side of the road obstructed the ability of motorists to see oncoming traffic. Josephine County successfully moved to be dismissed from the action on the ground that it did not own or have any responsibility to maintain the road at the location where the accident occurred. By the time that defendant discovered that the BLM—not Josephine County—owned the road, the limitation period applicable to actions against federal government agencies had passed. Plaintiff then initiated this action against defendant for legal malpractice.

Defendant moved for summary judgment on the ground that his failure to name the BLM in plaintiff's personal injury action was not negligent as a matter of law. That is so, defendant contended, because the BLM was immune from liability under ORS 105.682, which affords a landowner immunity from liability for any personal injury arising out of the use of its land for recreational purposes. In this case, defendant argued, it is undisputed that plaintiff was injured while participating in a motorcycle rally, a patently recreational event. Plaintiff opposed the motion on the ground that he was injured while riding his motorcycle, not recreating. According to plaintiff, travel simply is not the sort of recreational use that triggers immunity under ORS 105.682.

The trial court granted defendant's motion. In a letter opinion, the court carefully examined each of the parties' contentions concerning the applicability of ORS 105.682 and, more specifically, whether travel can qualify as a recreational use that triggers landowner immunity under that statute. The court concluded that, on the evidence before it, it was undisputed that

> "**the entire run** was intended to and had a recreational purpose. The road was not a means of access to and from a 'card game.' The whole event, *i.e.*[,] the 'poker run,' is a recreational activity and had the requisite recreational

purpose covered by the statute. The event's designation includes the term 'run' as well. There is no evidence presented to suggest that the 'run' did not start at Selmac Lake or at for instance the point where the first card was handed out. Plaintiff acknowledged the 'poker run' was a round trip from Selmac Lake and back, which is in effect a specified route for the run."

(Boldface in original.)

On appeal, plaintiff contends that the trial court erred in concluding that he was injured while engaged in a "recreational" activity within the meaning of ORS 105.682. According to plaintiff, "travel is not a recreational purpose." In support of his argument, plaintiff relies on the Supreme Court's decision in *Liberty v. State Dept. of Transportation*, 342 Or 11, 148 P3d 909 (2006), which he contends should be understood broadly to stand for the proposition that travel is not the sort of "recreational" use that triggers landowner immunity under ORS 105.682.

Defendant contends that plaintiff misreads both the statute and *Liberty*. According to defendant, the statute affords immunity to "recreational" uses, defined by reference to, among other things, hiking, which is a form of clearly recreational travel. *Liberty*, defendant contends, involved the quite narrow question whether travel, not for recreational purposes itself, but for the purpose of reaching a recreational destination, is a "recreational" use within the meaning of the statute.

██ When we review a trial court's decision to grant a motion for summary judgment, we examine the record in the light most favorable to the nonmoving party to determine whether the moving party has demonstrated an absence of genuine issues of material fact and that it is entitled to judgment as a matter of law. ORCP 47 C. In this case, the facts are undisputed; the sole issue is whether, on those undisputed facts, plaintiff's use of the BLM's road was "recreational" within the meaning of ORS 105.682. That presents a question of statutory construction, which is a question of law. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). In determining the meaning of the statute, we attempt to ascertain what the legislature most likely

intended, taking into account the text of the statute in context, and, where appropriate, legislative history and other aids to construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

ORS 105.682(1) provides that, subject to exceptions not pertinent to this case,

> "an owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes, woodcutting or the harvest of special forest products when the owner of land either directly or indirectly permits any person to use the land for recreational purposes, woodcutting or the harvest of special forest products. The limitation on liability provided by this section applies if the principal purpose for entry upon the land is for recreational purposes, woodcutting or the harvest of special forest products, and is not affected if the injury, death or damage occurs while the person entering land is engaging in activities other than the use of the land for recreational purposes, woodcutting or the harvest of special forest products."

The statute defines "recreational purposes" not by what it means, but rather, by what it includes:

> " 'Recreational purposes' includes, but is not limited to, outdoor activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, nature study, outdoor educational activities, waterskiing, winter sports, viewing or enjoying historical, archaeological, scenic or scientific sites or volunteering for any public purpose project."

ORS 105.672(5). The statute further provides that the immunities provided by ORS 105.682 apply to "[a]ll public and private lands," ORS 105.688(1)(a), as well as "[a]ll roads, bodies of water, watercourses, rights of way, buildings, fixtures and structures," ORS 105.688(1)(b), located on such public and private land.

■■ On the face of the statute itself, plaintiff's contention that travel is not a "recreational purpose" cannot easily be maintained. The statute's definition of recreational purposes

expressly lists several forms of travel, including hiking, boating, and waterskiing. It also includes on the list of recreational activities "viewing or enjoying historical, archaeological, scenic or scientific sites," all of which may be accomplished by the act of traveling. Furthermore, the statute defines the lands subject to recreational immunity as including, among other things, "[a]ll public and private lands," including "[a]ll roads" and "rights of way." ORS 105.688(1)(a), (b). Obviously, the legislature had some form of travel in mind, or the references to roads and rights of way have no discernible purpose.

That reading of the statute has the virtue of conforming to common usage, as well. It is not difficult to come up with a list of activities—Cycle Oregon and other bicycling activities, dune buggy riding, and dirt biking come to mind—that are forms of transportation, but are commonly regarded as recreational in nature. *See Coleman v. Oregon Parks and Recreation Dept.*, 221 Or App 484, 489, 190 P3d 487 (2008), *rev'd on other grounds*, 347 Or 94, 217 P3d 651 (2009) (immunity under ORS 105.682 held to apply to mountain biking). In a similar vein, the legislature itself has recognized in other statutes that travel can be recreational in nature. *See* ORS 390.010(3)(d) (declaring that it is in the public interest to develop a "system of scenic roads to enhance recreational travel").

Plaintiff insists that, if travel is regarded as recreational, then immunity will attach to any liability arising out of incidents in which individuals merely look out of their car windows as they drive down a public highway. ORS 105.682(1), however, makes clear that the immunity that it affords is limited to cases in which "the *principal purpose* for entry upon the land is for recreational purposes" and related activities. (Emphasis added.) Plaintiff's slippery slope argument is not persuasive.

Plaintiff's reliance on *Liberty* is likewise off the mark. In *Liberty*, the narrow question before the court was whether ORS 105.682 grants immunity to a landowner who permits others to cross its land *to obtain access* to other land where recreational activities will occur. The court held that the act of obtaining access to land where recreation will occur

is not itself recreation for the purposes of the statute. 342 Or at 21-22. It bears mentioning that the court was not deciding that travel, as such, could not be recreational under the statute; rather, the court explained that it addressed only the act of traveling as a *means of obtaining access* to another area for the purpose of recreating there. *Id.* at 20-21. Indeed, the court observed that the statute itself made clear that some forms of travel—the court cited hiking, in particular—are recreational in nature. *Id.* at 20-21 n 2.

Turning to the record in this case, as the trial court observed, it is undisputed that the Poker Run was an event that involved a predetermined route to be traveled by the participating motorcyclists. It is likewise undisputed that traveling over that route was part of the event itself; there is no evidence that the event was merely a poker game and that the travel between legs was merely incidental to the card game. The Poker *Run* was a motorcycle rally, not a poker tournament. The travel itself was the recreation. Plaintiff certainly points to no evidence in the record that gives rise to an alternative inference.

We conclude that the trial court correctly determined that the BLM, the owner of the land on which the recreational activity—and the injuries that resulted—took place, was entitled to immunity under ORS 105.682. Accordingly, the trial court did not err in granting summary judgment for defendant in plaintiff's legal malpractice claim.

Affirmed.