201

Submitted October 28, 2009, reversed January 6, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEROME MICHAEL BEGAY,
*Defendant-Appellant.*

Washington County Circuit Court
D080840M; A139130

225 P3d 108

Peter Gartlan, Chief Defender, and Carolyn Bys, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Justice J. Rillera, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Carson, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from the judgment of his conviction for interfering with public transportation, ORS 166.116(1)(a), assigning error to the denial of his motion for a judgment of acquittal (MJOA). In particular, defendant contends that he had not "enter[ed] or remain[ed] unlawfully in * * * [a] public transit station," ORS 166.116(1)(a), in violation of a TriMet exclusion order because the area at the Hillsboro Transit Center where he was walking when he was arrested was not a "Transit Dedicated Light Rail Platform[ ]" as defined in the Notice of Exclusion. We agree with defendant and, accordingly, reverse.

■      In reviewing the denial of an MJOA, we view the evidence and reasonably related inferences in the light most favorable to the state. *See State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). Consistently with that standard, the material facts are as follows: On January 27, 2008, Hillsboro Police Officer Bunday issued a TriMet Notice of Exclusion to defendant for riding on a MAX train without having paid the fare. As pertinent here, the notice stated that defendant was "excluded from and prohibited from entering or remaining upon, the TriMet system, as described in the attached Exhibit D" for a period of 60 days.[1] As described in detail below, Exhibit D to the notice specified that the exclusion applied to, *inter alia*, "Transit Dedicated Light Rail Platforms."

On February 16, 2008, during the period of exclusion, Hillsboro Police Officer Morse saw defendant walking on the westbound MAX train platform at the Hillsboro Transit Center. The transit center is a complex that includes not only platforms for eastbound and westbound MAX trains but also bus shelters and bicycle racks, as well as two buildings

---

[1] The notice specified that, unless defendant timely requested a hearing, the exclusion would take effect 10 business days after receipt of the notice. Defendant requested a hearing, staying the exclusion, but his challenge was unsuccessful. Accordingly, the exclusion became effective on February 14 for the period through April 12, 2008.

that are immediately adjacent to the westbound train plat-form. One of those buildings houses a Hillsboro police substa-tion, and, in the walkway between the two buildings, there are public pay telephones.

Unlike at some other TriMet locations, where access to platforms is restricted to persons possessing proof of fare, the MAX train platforms at the Hillsboro Transit Center are open to members of the public without proof of fare. Conse-quently, members of the public without a MAX ticket and who have no intention of riding the MAX train can use the westbound platform—the location where defendant was walking—to gain access to the adjacent pay telephones and police substation. Similarly, members of the public can, with-out proof of fare, enter the platform area to park their bicy-cles at the adjacent bicycle racks.

Morse recognized defendant from a previous encoun-ter and knew that he was subject to a currently effective TriMet exclusion order. Accordingly, he arrested defendant, and defendant was charged by complaint with one count of interfering with public transportation, ORS 166.116. That statute provides, in part:

"(1)   A person commits the crime of interfering with public transportation if the person:

"(a)   Intentionally or knowingly enters or remains unlawfully in or on a public transit vehicle or public transit station;

"* * * * *

"(3)   As used in this section:

"(a)   'Enter or remain unlawfully' has the meaning given that term in ORS 164.205."

ORS 164.205(3), in turn, defines the term "enter or remain unlawfully":

" 'Enter or remain unlawfully' means:

"(a)   To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so[.]"

Defendant waived trial by jury, and, after the state presented its evidence, he moved for a judgment of acquittal. Defendant argued that, given the terms of the exclusion notice—and particularly the description of the scope of exclusion in Exhibit D—his presence on the platform did not violate the exclusion and, thus, was not "unlawful" for purposes of ORS 166.116(1)(a). Defendant contended, particularly, that the platform where he had been arrested was not a "Transit Dedicated Light Rail Platform[ ]" as defined in Exhibit D, because that area was not used solely for purposes of transit but, instead, could be used by members of the public who are not TriMet riders for a variety of purposes not related to mass transit, including making telephone calls at the pay telephones, contacting the police at the adjacent substation, and parking bicycles. The trial court denied that motion without comment. When defendant renewed his MJOA at the close of all evidence, the court again denied the motion, observing that

> "[p]eople that are excluded are excluded from transit dedicated light rail platforms in general. This was a transit dedicated light rail platform."

On appeal, defendant assigns error to the denial of the MJOA and reprises his arguments before the trial court. We begin with the operative language of the exclusion notice, including Exhibit D. As noted, the face of the notice, under the heading "Effect of this Notice," provides, "Unless your exclusion is modified or set aside * * * you will be excluded from and prohibited from entering or remaining upon, the TriMet system, as described in the attached Exhibit D." Exhibit D provides, in part:

> "Notwithstanding any definition of the geographic boundaries of the District Transit System contained within [ORS] 267.010, resolutions affecting TriMet's boundaries, contract provisions, the TriMet Code, any formal legal designation of certain property as owned or controlled by TriMet, or elsewhere, the geographic boundaries of the District Transit System, for the purpose of enforcing TriMet regulations through exclusions, or enforcing exclusions through arrest or criminal citation, shall be construed as limited to the areas that are readily discernable as TriMet property, as defined herein. No person shall be issued a Notice of

Exclusion for conduct that occurred outside of the boundaries defined herein. *In addition, the 'part of the District Transit System [from] which said person is excluded' shall be limited to the following*:

"1.   TriMet Vehicles. * * *

"2.   TriMet Parking Facilities. * * *

"3.   Partially or Fully Enclosed Bus Shelters. * * *

"4.   Transit Dedicated Light Rail Platforms. Transit Dedicated Platforms *include those platforms that are used solely* for the purpose of transit and *have no shared use with the public or public walkways,* through-ways, or sidewalks, and includes adjoining stairways, ramps and elevators.

"5.   Trackways * * *."

(Emphasis added.)

At first blush, the use of the term " 'part of the District Transit System [from] which said person is excluded' " seems inscrutable because there is no explicit referent in the text of the notice or the balance of Exhibit D. However, contextually, it is patent that that language corresponds to, and is derived from, TriMet Code section 28.18B., which provides:

"A person excluded under TMC Section 28.18 may not during the period of exclusion, enter or remain upon any *part of the District Transit System from which said person is excluded*. An excluded person who enters or remains upon any *part of the District Transit System from which the person has been excluded* may be charged with the crime of Interfering with Public Transportation (ORS 166.116) or the crime of Criminal Trespass in the Second Degree (ORS 164.245)."

(Emphasis added.)

■   Given that context, Exhibit D, by its terms, limits the scope of the exclusion to five precisely defined types of locations that do not collectively comprise the totality of TriMet's property. That is, a person who is subject to the exclusion would not violate that exclusion—and, derivatively, ORS 166.116(1)(a)—merely by entering upon TriMet property; rather, the state, to establish a violation, must demonstrate

that a defendant intentionally or knowingly entered one of the five specifically defined types of locations. Consequently, in the circumstances of this case, the inquiry reduces to whether the westbound MAX train platform at the Hillsboro Transit Center was a "Transit Dedicated Light Rail Platform[ ]" as defined in Exhibit D.

Defendant contends that the uncontroverted evidence established that the platform could be, and was, used by members of the public, including those who are not TriMet passengers, for a variety of purposes that are not related to mass transit, including to make pay telephone calls, to park and lock their bicycles at the bicycle rack on the platform, and to gain access to contact police at the adjacent police substation. Defendant reasons and asserts, consequently, that the westbound platform was not a "Transit Dedicated Light Rail Platform[ ]" because it was *not* "used solely for the purpose of transit" and that it *did* have a "shared use with the public or public walkways [and] through-ways."

We do not understand the state to dispute defendant's characterization of the nature and multiplicity of the platform's shared public uses. Rather, the state contends that defendant's understanding of the scope and content of "Transit Dedicated Light Rail Platforms" is erroneously restrictive. Specifically, the state stresses that the operative provision begins, "Transit Dedicated Platforms *include* * * *." (Emphasis in state's brief.) The state then highlights the distinction, in its view, between "means" (as a term of exclusive definition) and "includes" (as a term of nonexclusive description). That is, the state posits that "includes" in this context functionally connotes "including, but not limited to." Thus, in the state's view,

> "platforms that are solely dedicated for transit purposes and have no shared public use are only a part of a larger category, i.e., all transit dedicated light rail platforms. In other words, transit dedicated light rail platforms are not limited to those that are solely dedicated for transit purposes and have no shared public use."

As further contextual support for that construction, the state points to other provisions of Exhibit D that either

begin with "include" but subsequently qualify that description with limiting "but not including" language or explicitly employ terms of exclusion.[2]

The state's efforts are unavailing as contradicting the plain language of the pertinent provision of Exhibit D. Again, that provision reads:

"4. Transit Dedicated Light Rail Platforms. Transit Dedicated Platforms include those platforms that are used solely for the purpose of transit and have no shared use with the public or public walkways, through-ways, or sidewalks, and includes adjoining stairways, ramps and elevators."

The operative term in that provision is "[d]edicated." "Dedicate" means, as pertinent in common use, "to set apart or devote formally or seriously to a definite use, end, or service." *Webster's Third New Int'l Dictionary* 589 (unabridged ed 2002).

Consistently with that understanding, "include" in the definition connotes "means"—that is, "Transit *Dedicated* Light Rail Platforms" means platforms that are used solely for transit purposes and does not include those platforms for which there is a shared public use. Conversely, to construe "includes" as the state urges—*viz.*, that "Transit Dedicated Light Rail Platforms" includes all platforms used in part for transit purposes, regardless of the nature and degree of the shared public use for nontransit purposes, ignores or obviates the sense and significance of "dedicated."

---

[2] The state refers, for example, to the provisions of Exhibit D pertaining to "TriMet Parking Facilities" and "Trackways":

"2. TriMet Parking Facilities. TriMet parking facilities shall *include* all parking lots reserved for transit purposes, including park and ride facilities, and including all driving pathways to and within a parking lot, *but not including* adjacent sidewalks or walkways.

"* * * * *

"5. Trackways: All trackway areas where pedestrian traffic is prohibited, but *excluding* all areas of trackway in downtown Portland where tracks lay upon city streets, and *excluding* areas of trackway located at signalized or signed intersections designated for pedestrian or vehicular crossing."

(Emphasis added.)

Further, under the state's reading, the wording "that are used solely for the purpose of transit and have no shared use with the public" would be gratuitous, as self-evident. That is, if the universe of "Transit Dedicated Light Rail Platforms" includes all platforms with any transit-related purpose, however slight, then, of course, that universe includes "those platforms that are used solely for the purpose of transit." Logically, linguistically, and functionally, it is counterintuitive to define an (allegedly) broadly inclusive class solely by reference to its most indisputably obvious member. *Accord Kelly v. Hochberg*, 231 Or App 155, 160, 217 P3d 699 (2009) (addressing construction of "recreational purposes" definitional statutes, which stated that the term "includes, but is not limited to" a variety of listed uses); *Friends of Yamhill County v. Yamhill County*, 229 Or App 188, 193, 211 P3d 297 (2009) (noting that, under principle of *ejusdem generis*, a court, in construing statutory definition that begins with "includes" followed by "an open-ended statutory list," "is limited by the common characteristics of those things already in the list").

■　We thus agree with defendant that "Transit Dedicated Light Rail Platforms" for purposes of Exhibit D means those used "solely" for transit purposes and does not encompass those with a "shared use with the public." We further agree with defendant that, even viewed most favorably to the state, the evidence in this case did not establish that the westbound MAX train platform at the Hillsboro Transit Center was a "Transit Dedicated Light Rail Platform" as so defined. Consequently, defendant's presence at that location did not violate the exclusion order, and there is no evidence that defendant had otherwise "enter[ed] or remain[ed] unlawfully" in that location. ORS 166.116(1)(a). Accordingly, the trial court erred in denying the MJOA.

Reversed.