Argued and submitted September 14, decision of Court of Appeals and
judgment of circuit court affirmed November 18, 2010

Mike KELLY,
*Petitioner on Review,*

*v.*

Samuel Israel HOCHBERG,
*Respondent on Review.*

(CC 06CV0508; CA A136949; SC S058035)

243 P3d 62

W. Eugene Hallman, Pendleton, argued the cause for petitioner on review. Jeffry A. Long, Jeffry Long & Associates, Lake Oswego, filed the brief for petitioner on review.

James M. Callahan, Callahan & Shears, P.C., Portland, argued the cause and filed the brief for respondent on review.

W. Eugene Hallman, Pendleton, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

Jeff J. Payne, Assistant Attorney General, filed a brief for *amicus curiae* State of Oregon. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Susan D. Marmaduke, Portland, filed a brief for *amicus curiae* Oregon Association of Defense Counsel.

BALMER, J.

**BALMER, J.**

This case requires us to determine the scope of immunity under ORS 105.682, the "recreational immunity" statute,[1] as applied to a motorcycle accident on a road traversing Bureau of Land Management property. The accident occurred when plaintiff, while riding his motorcycle as part of a motorcycle rally, collided with an automobile. Plaintiff brought an action against Josephine County alleging negligent maintenance of Cedar Flat Road where the accident occurred. The road, however, was owned and maintained by the federal Bureau of Land Management (BLM). By the time plaintiff's attorney realized his mistake, the two-year statute of limitations for tort actions against the federal government had passed. Plaintiff then brought this malpractice action against his attorney for failing to bring a timely negligence action against BLM. The trial court granted summary judgment for defendant on the ground that, even if defendant had filed a timely action against BLM, that action would have been unsuccessful because BLM was immune from liability under ORS 105.682. The Court of Appeals affirmed. *Kelly v. Hochberg*, 231 Or App 155, 217 P3d 699 (2009). We allowed plaintiff's petition for review and, for the reasons set forth below, affirm the decision of the Court of Appeals and the judgment of the trial court.

We take the facts from the Court of Appeals opinion and the record. Plaintiff attended the Iron Horse Rodeo, a motorcycle rally near the town of Williams in Josephine County. One of the planned activities at the rally was the Poker Run, an event in which riders departed from the Lake Selmac campground and collected cards at several intermediate stops before returning to the lake to compare hands. The winner received a pot of money based on the entry fees paid by the participants. Plaintiff paid the entry fee and set out to collect the required cards.

The first leg of the Poker Run, from Lake Selmac to Williams, followed Cedar Flat Road. Owing to the checkerboard pattern of federal land ownership in that portion of the

---

[1] All citations are to the current version of the recreational immunity statute. Although the statute has been amended by the legislature since the events giving rise to this action, those amendments are not material to our analysis.

state, Cedar Flat Road sometimes is on BLM property and sometimes is on Josephine County property. Where the road crosses BLM property, the road is owned and maintained by BLM. According to BLM documents in the record, BLM allows use of the road year round for access to BLM property for administrative and commercial purposes, such as BLM management activities, logging, and grazing. Some portions of the road at higher elevations are closed in winter because of snow. Additionally, BLM has opened its land in the area, including Cedar Flat Road, to the public for recreational purposes. BLM's Western Oregon Transportation Management Plan (TMP), which controls BLM's road management for the area, provides that the public may use Cedar Flat Road "for vehicle access to recreate on public lands." The TMP also states that BLM considers Cedar Flat Road to be a "private government road." While riding his motorcycle on that road, plaintiff collided with an automobile and suffered injuries.

Plaintiff retained defendant to represent him, and defendant filed an action in state court on plaintiff's behalf, naming as defendants the other driver and Josephine County, which, as noted, defendant mistakenly believed owned Cedar Flat Road. The complaint alleged that plaintiff's accident was caused, in part, by the county's negligent maintenance of the roadway that had allowed vegetation to obscure plaintiff's ability to see oncoming traffic. Josephine County successfully moved for summary judgment in the underlying action because BLM, rather than the county, owned and maintained the road where the accident occurred. By the time defendant realized that BLM owned the road, the two-year statute of limitations for federal tort claims had passed. Plaintiff then brought this legal malpractice action against defendant.

Defendant moved for summary judgment, arguing that, even if he had named BLM in the original negligence action and had filed the action in federal court, BLM would have been immune from tort liability under Oregon's recreational immunity statute.[2] That statute grants a landowner

_____

[2] Under the Federal Tort Claims Act, the federal government is liable "in the same manner and to the same extent as a private individual under like circumstances * * *." 28 USC § 2674. Such claims may only be brought in federal court. 28 USC § 1346(b). The Ninth Circuit has applied Oregon's recreational immunity

immunity from tort liability for personal injuries when the landowner "permits any person to use the land for recreational purposes" without charge. ORS 105.682(1).[3] Defendant asserted that BLM had opened Cedar Flat Road to the public for recreational purposes, without charge, and that plaintiff was using the road for a recreational purpose under ORS 105.672(5)[4] when he was injured. For that reason, defendant argued, BLM was immune from liability. Accordingly, defendant was not liable for legal malpractice because, even if he had timely filed a federal court action against BLM on behalf of plaintiff, plaintiff would not have been able to recover any damages against BLM. The trial court granted defendant's motion, finding that the Poker Run was within the ambit of the statute because the entire activity—including participating in the event, riding the motorcycle, collecting the cards, and comparing them with other participant's poker hands— was "intended to and had a recreational purpose."

Plaintiff appealed, arguing that riding his motorcycle on Cedar Flat Road as part of the Poker Run was "travel" and therefore could not be a "recreational purpose." As noted, the Court of Appeals affirmed. After examining the text of ORS 105.672(5), the court determined that plaintiff's motorcycle riding as part of the Poker Run had a recreational

---

statute to bar recovery in tort actions against BLM. *See O'Neal v. United States,* 814 F2d 1285 (9th Cir1987) (BLM not liable for injuries sustained when plaintiffs used BLM road for a recreational purpose).

[3] ORS 105.682(1) provides:

"[A]n owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes, gardening, woodcutting or the harvest of special forest products when the owner of the land either directly or indirectly permits any person to use the land for recreational purposes, gardening, woodcutting or the harvest of special forest products. The limitation on liability provided by this section applies if the principal purpose for entry upon the land is for recreational purposes, gardening, woodcutting or the harvest of special forest products, and is not affected if the injury, death or damage occurs while the person entering land is engaging in activities other than the use of the land for recreational purposes, gardening, woodcutting or the harvest of special forest products."

[4] ORS 105.672(5) provides:

" 'Recreational purposes' includes, but is not limited to, outdoor activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, nature study, outdoor educational activities, waterskiing, winter sports, viewing or enjoying historical, archaeological, scenic or scientific sites or volunteering for any public purpose project."

purpose. The court observed that the statute included several other forms of travel in the list of outdoor activities that are "recreational purposes," such as hiking, boating, and water-skiing. *Kelly*, 231 Or App at 160-61. Additionally, the court noted that ORS 105.688(1)(b) defines the land subject to recreational immunity as including "[a]ll roads" and "rights of way," and if, as plaintiff argued, all travel was excluded from the definition of the term "recreational purposes," then "the references to roads and rights of way have no discernible purpose." *Id.* at 161.

On review, plaintiff renews the arguments that he made before the Court of Appeals. He first asserts that riding a motorcycle is travel and that all travel is outside the recreational purposes contemplated by the legislature. According to plaintiff, this court's decision in *Liberty v. State Dept. of Transportation*, 342 Or 11, 148 P3d 909 (2006),[5] stands for the proposition that "recreational purposes" include only activities that are recreational in and of themselves and not activities that have a "recreational" purpose but also have an additional purpose such as transportation from one place to another. Because riding a motorcycle, driving a car, or riding a bicycle have a purpose in addition to recreation (*i.e.*, travel), plaintiff contends that those activities are not within the meaning of "recreational purposes" in ORS 105.672(5). Plaintiff distinguishes between an ordinary understanding of recreation, which would apply to a Sunday drive in the car, and the more narrow intention of the legislature in the immunity statute, which limits "recreational purposes" to activities that are not dual-purpose.

Plaintiff also contends that the Court of Appeals erred because determining motorcycle riding to be a "recreational purpose" within the meaning of the statute would lead to absurd results. Plaintiff asserts that Cedar Flat Road is a "public road" because BLM has opened the road for "commercial, administrative, and recreational access." If plaintiff's motorcycle riding is a "recreational purpose" in this case, plaintiff argues, then any traveler who subjectively enjoys

---

[5] In *Liberty*, this court held that crossing land for the purpose of reaching a separate parcel of land, where one intended to recreate, was not a "recreational purpose." 342 Or at 21.

the act of riding or driving would be unable to bring a negligence action for injuries occurring on any public highway. Finally, plaintiff suggests that if the use of motorcycles, bicycles, or automobiles on roads can be a recreational purpose, then the law would, in effect, treat a leisure driver and a commuter involved in identical accidents differently based solely on the individual driver's state of mind at the time of the accident. In plaintiff's view, the legislature did not intend to create such "anomalous results" (plaintiff's characterization), nor did it intend to create a subjective test for determining what activities are "recreational purposes."

Defendant responds that the Court of Appeals correctly held that BLM would be immune from liability in the circumstances at issue here. Defendant argues that BLM expressly opened its property for recreational use; that the Poker Run, beginning and ending at the Lake Selmac campground, had a recreational purpose; and that plaintiff's sole reason for being on BLM property was to participate in the Poker Run and related recreational events. Defendant also disputes plaintiff's claim that the Court of Appeals decision leads to absurd or anomalous results. Defendant notes that this case does not present the question of recreation on a public road at all; rather, he argues, BLM is akin to a private landowner that allows the public to use its land, including its roads, for limited purposes. Defendant distinguishes "public roads," which under state law are open for all lawful uses, and BLM roads, which BLM opens only for uses permitted by the agency and retains the authority to close if BLM so decides. Although BLM permits the public to use Cedar Flat Road for access to recreate on BLM property, the agency can revoke the public's access at the agency's discretion, whereas owners of public roads do not have that ability. Therefore, according to defendant, this case does not raise the question whether owners of public roads are immune from tort liability related to recreational use of those roads.

Because this is a legal malpractice action, the first issue is whether plaintiff would have been successful had he filed a timely tort action against BLM in federal court. *See Harding v. Bell*, 265 Or 202, 205, 508 P2d 216 (1973) (plaintiff in legal malpractice action "must show that he would have won the first suit as one step in order to win the second

one" (citation omitted)). Under the Federal Tort Claims Act, "[t]he United States [is] liable * * * in the same manner and to the same extent as a private individual under like circumstances." 28 USC § 2674. Thus, if a private individual would have been immune under ORS 105.682 in this case, then so would BLM. *See O'Neal v. United States*, 814 F2d 1285, 1287 (9th Cir 1987) (stating liability standard under FTCA as applied to BLM). We turn to the question whether BLM would have been immune under ORS 105.682, based on the facts set out above.

As noted, ORS 105.682 confers limited immunity on landowners that permit others to use their land for "recreational purposes." The dispute between the parties here is over the meaning of the term "recreational purposes" and whether plaintiff's participation in the Poker Run was such a purpose. ORS 105.672(5) provides:

> " 'Recreational purposes' includes, but is not limited to, outdoor activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, nature study, outdoor educational activities, waterskiing, winter sports, viewing or enjoying historical, archaeological, scenic or scientific sites or volunteering for any public purpose project."

As a reading of that statute demonstrates, it does not actually *define* the term "recreational purposes," but, rather, it illustrates what the term means by providing an open-ended list of "outdoor activities" that are "included" within the term "recreational purposes." Examining the outdoor activities that the statute lists, travel emerges as a common characteristic of several of the named activities. Hiking and boating are forms of travel, for example, and scenic or historic sites may be "view[ed]" and "enjoy[ed]" through the act of traveling. The enumerated examples thus indicate that the fact that an outdoor activity involves travel is not a basis for *excluding* that activity from the definition of "recreational purposes." Moreover, the legislature included the terms "roads" and "rights of way" in the definition of the areas to which recreational immunity applies. ORS 105.688(1)(b). Although a person certainly may hike on a road, nothing in the statute suggests that hiking is the only outdoor activity on a road that would qualify as a "recreational purpose" within the meaning of ORS 105.672(5). Rather, it appears

that recreational purposes can include other modes of moving from one place to another—that is, traveling—on a road, as long as the other requirements of the statute are met. *See Coleman v. Oregon Parks and Recreation Dept.*, 221 Or App 484, 489, 190 P3d 487 (2008), *rev'd on other grounds*, 347 Or 94, 217 P3d 651 (2009) (applying immunity under ORS 105.682 to mountain biking).

■　　　Here, there is little question that the Poker Run, as a whole, was recreation. Although it involved travel by motorcycle on a road, it was, as the name of the event made clear, a poker game, with an entry fee, the collection of a number of playing cards, and the comparison of one's hand with those of other players to see who would win the jackpot. It was quintessentially a game—the kind of "play," "diversion," or "entertainment" that comes within the ordinary definition of "recreation." *See Webster's Third New Int'l Dictionary* 1899 (unabridged ed 2002) (defining "recreation"). Accordingly, plaintiff's ride on the BLM road was not a means of accessing recreation—the card game—but rather his activity of riding to collect the cards was part and parcel of the recreational purpose itself.

　　　　Plaintiff misinterprets this court's decision in *Liberty* when he asserts that motorcycle riding is not a recreational purpose because it can have an end other than recreation, such as travel. In *Liberty*, this court identified two nonexclusive traits of the enumerated outdoor activities in ORS 105.672(5): (1) they take place outdoors, and (2) the activities are recreational in and of themselves, *i.e.*, none of the specified activities, with the possible exception of hiking, "is solely a means to a different recreational activity." 342 Or at 20-21. *Liberty* does not stand for the categorical proposition that *only* activities that can be nothing other than recreation can come within the meaning of ORS 105.672(5). Rather, *Liberty* illustrates the application of *ejusdem generis* to the specific question of statutory interpretation at issue in that case: Is crossing land for the purpose of reaching a separate parcel of land, where one intended to recreate, a "recreational purpose"? The reason that crossing land solely to access a recreational site is not within the statute is because the act of crossing does not share the characteristic of being recreational and is instead *only* a means to access recreation.

As noted, plaintiff here had already traveled to and arrived at the site of the recreational activity—he had gained "access"—before the Poker Run began. His purpose in traveling on BLM land when the accident occurred was not to gain access to the site, but instead was to participate in the Poker Run, *i.e.*, it was recreational.

Plaintiff also asserts that, if BLM is immune from liability on the facts here, then immunity would attach any time a driver or passenger in a vehicle is subjectively enjoying himself or herself while traveling on any public highway. We disagree. The extent to which recreational immunity would apply to activities on Oregon's public roads is not before us in this case. The road here is one that BLM policy treats as a private government road, which BLM has opened for recreational, administrative, and commercial purposes; it is not a public thoroughfare. *See O'Neal*, 814 F2d at 1287 (applying Oregon recreational immunity statute to bar recovery by hunters injured when driving on BLM logging road); *compare Seyler v. United States*, 832 F2d 120, 122 (9th Cir 1987) (holding that Idaho recreational immunity statute did not bar recovery for accident on Bureau of Indian Affairs road because road was a "public thoroughfare").

■ Plaintiff's motorcycle accident did not occur on a public road. Oregon law defines a "public road" as "a road over which the public has *a right of use that is a matter of public record.*" ORS 368.001(5) (emphasis added). Although access to public roads may be restricted, the reasons for imposing such restrictions are limited to public safety concerns and protecting the road itself from damage. ORS 810.030. Here, the record demonstrates that Cedar Flat Road is not a "public road" but is, instead, designated by BLM as a "private government road." BLM's Western Oregon Transportation Management Plan (TMP) states that "[p]ublic use of BLM roads is allowed or not allowed by BLM policy or administration decision and not by right." The TMP notes that BLM "is not a public road authority and cannot dedicate public roads" and that BLM roads do not fit the criteria for public roads established by the United States Secretary of Transportation.

Regarding Cedar Flat Road, the TMP states that public use of the road is limited to "casual use for vehicle access to recreate on public lands."[6] Moreover, federal regulations make clear that BLM may close roads on its property in order to meet its management objectives, whenever certain broad criteria are met. 43 CFR 8364.1.[7] In contrast to roads that are "public roads" under Oregon statutes, BLM could close Cedar Flat Road if it determined that the use of the road by the public was hindering BLM management objectives. Because there is no public right of use and BLM may close its roads to meet management objectives, Cedar Flat Road is not a "public road." *See Otteson v. United States*, 622 F2d 516, 518-19 (10th Cir 1980) (distinguishing Forest Service road from public thoroughfare based on Forest Service's ability to close the road for management purposes); *O'Neal*, 814 F2d at 1287 (same); *compare Seyler*, 832 F2d at 122 (recovery not barred by Idaho recreational immunity statute, where federal agency lacked authority to exclude use of road for any lawful purpose).

We conclude that plaintiff had a recreational purpose when he entered BLM's property on Cedar Flat Road as a participant in the Poker Run. Had defendant timely filed a negligence action on behalf of plaintiff in federal court, BLM would have been able to assert immunity from tort liability under ORS 105.682. The trial court correctly granted defendant's motion for summary judgment on plaintiff's legal malpractice claim.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[6] "Casual use" is defined by regulation as "activities ordinarily resulting in no or negligible disturbance of the public lands, resources, or improvements." 43 CFR 2801.5(b).

[7] 43 CFR 8364.1(a) provides:

"To protect persons, property, and public lands and resources, the authorized officer may issue an order to close or restrict use of designated public lands."